MARYLAND CASUALTY CO. v. BOONE
et al.

No. 3656.

Court of Civil Appeals of Texas. El Paso.
March 31, 1938.

Rehearing Denied April 21, 1938.

R. J. Channell, of El Paso, for appellant.

R. E. Cunningham, of El Paso, for appellees.

NEALON, Chief Justice.

This is a workman's compensation case in which the claimants, Verna A. Boone and Dolores Boone, are, respectively, the widow and minor child of Shelton P. Boone, who was killed in a collision between an automobile in which he was a passenger and a passenger train on Montana street in the city of El Paso, Tex., between 12 and 1 a. m. on Sunday morning, April 26, 1936. At that time Mr. Boone was an employee of the Morrison Agency, which was operated by D. J. Morrison and which dealt in National Cash Registers and carried workmen's compensation, issued by the Maryland Casualty Company. The Industrial Accident Board made its award in favor of claimants, appealing from which the Maryland Casualty Company filed this suit in the Sixty-Fifth judicial district court of El Paso county, Tex., to set aside the award. Appellees, by way of cross-action, containing appropriate allegations, sought to recover of appellant compensation at the rate of $20 per week for 360 weeks from April 26, 1936, payable in a lump sum. The trial was to a jury, which, in response to special issues, made the following findings: "At the time of the collision in which S. P. Boone was killed, he was on his way to his home to get tools to repair a cash register in the Hilton Drug Company"; "S. P. Boone was in the reasonable discharge of his usual employment at the time of the accident in which he was killed"; "it was reasonably necessary for S. P. Boone to go to his home for tools at the time of his injury and death."

Upon these findings the court rendered judgment in favor of appellees for a lump sum. Maryland Casualty Company appeals from this judgment.

Opinion.

Though appellant urges eight assignments of error, but one question is presented by the briefs: Does the evidence justify the jury's findings that S. P. Boone, when killed, was acting in the course of his employment? Appellant urges that the evidence shows as a matter of law that when Boone was killed he was not engaged in the reasonable discharge of any of the usual duties of his em-

ployment; that he was killed on a public street in the city of El Paso; and that at the time he was subjected to no greater risk than the traveling public.

From the evidence it appears that Boone was, at the time of his death, an employee of insurer; that he worked six days a week and eight hours a day, and worked on Sunday and at night if emergencies arose; that there was a listing in the local telephone directory advertising the business of his employers and listing his telephone as one to be called for Sunday and night service; that the Hilton Drug Store in El Paso had purchased three cash registers from insured; that decedent's employer was under contract obligation to keep these machines repaired, and that it was decedent's duty, as a mechanic and employee of insured, to see that these machines functioned properly at all times; that it was part of his duty to inspect said machines, and that it was customary for him to call upon customers and see how the machines he repaired worked after being repaired; that it was part of his duty to repair the cash registers at the Hilton Drug Store; that he worked on the machines in question Saturday morning, April 25th; that his employer received a telephone call about 4:30 a. m. Saturday morning from the Hilton Drug Store, complaining that the cash register was not working properly; that the machine was taken to his employer's place of business for repair and returned later the same day; that a convention was held in his employer's salesroom from 1 p. m. to 5:30 p. m. April 25th, and that, after a visit to Juarez in company with his wife and his employer, decedent returned to El Paso at 10:45 p. m.; that his employer told the employees accompanying him that he wished to get a cup of coffee, and decedent said he would go over to the hotel (meaning Hotel Hilton) and "check up that machine." It was in evidence further that part of the time decedent used his private automobile in the business of his employer in going to various places to repair cash registers; that he always kept some of his tools at home, and on Saturday nights he always threw his tool kit into his car and took it with him to avoid returning to the shop on Sunday. The tool kit consisted of ribbons, ink-ribbons, smaller parts, screw drivers, punches and drills, and "things they need—parts and tools necessary to repair a cash register." Decedent inspected the cash register at the Hilton Drug Store and found that something was broken; one of the witnesses expressed the trouble in this language: "He (decedent) told me the thing was 'balled up,' and came over to me and said he would have to get the tools." The night clerk at the drug store attempted to call decedent at his home about an hour before decedent made his last visit to the drug store, the object of the call being to complain that the cash register was not working. He told decedent that something was wrong with the cash register, that it was slowed up, it hardly turned over so it would open the drawer. The conversation between the night clerk and decedent, as detailed in the statement of facts, appears in part in question and answer form as follows:

"Q. Tell the conversation between you and Mr. Boone? A. He told me, he says 'I haven't got any tools to work on it, I will have to get my tools, before I can go to work on it, I will have to take the back off and go in and fix something about the motor,' and he left there with the understanding between him and I he was going to get his tools and return.

"Q. When was he to return? A. As quick as he could get his tools.

"Q. Did you tell him any special reason you wanted it fixed that night? A. That being Saturday night, and Sunday was another heavy day, and the cash register place is never open on Sunday.

"Q. With reference to the business, did you tell him you needed it Sunday? A. We did, needed it Saturday night, Saturday night is heavy and Sunday another heavy day.

"Q. Now, he left with what understanding? A. That he was to go home and get his tool kit.

"Q. And come back and fix it? A. Come back and fix the register."

While driving to his home immediately after this conversation, Boone was killed. From this and other evidence it is clear that Boone was returning to his home to get his tools to perform a task that was in the course of his employment. Part of that performance consisted in getting his tools and bringing them to the place at which the work was to be done. The performance of this latter duty required him to go upon the streets and to return to his home. It is no reply to say that there were other tools at his employer's place of business. It is evident that for some reason he considered those that he had taken to his home the ones either necessary or preferable to use for the

particular service. This much may be inferred from the fact that it was customary for him to have these particular tools at his home in readiness for emergency calls at night and on Sundays. This case is as strong or stronger for plaintiffs than was Texas Employers Ins. Ass'n v. Schwarz, 107 S.W.2d 666, decided by this court, and in which application for writ of error was dismissed. At the time of his death Boone was actually engaged in the performance of a particular duty that required his presence upon the street. This case is controlled by the principles stated in Consolidated Underwriters v. Breedlove, 114 Tex. 172, 265 S.W. 128, which was cited with approval in Smith v. Texas Employers' Ins. Ass'n, Tex.Com. App., 105 S.W.2d 192.

In the light of the evidence in the record, and in harmony with the decisions cited, we hold that the verdict and judgment were justified. Appellant's assignments of error are overruled and the judgment of the district court is affirmed.